**ACTIVE TRANSPORTATION COMPANY, L.L.C.** Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Teamsters Local Union No. 71 Intervenor.**

**Nos. 03–1374, 03–1433.**

United States Court of Appeals, District of Columbia Circuit.

Filed: Oct. 15, 2004.

Rehearing En Banc Denied Dec. 13, 2004.

Frederick Lee Cornnell, Jr., Attorney, Aileen A. Armstrong, Deputy Associate General Counsel, Usha Dheenan, National Labor Relations Board, (NLRB) General Counsel, Washington, DC, for National Labor Relations Board.

C. John Holmquist, Jr., Dickinson Wright, Bloomfield Hills, MI, for Active Transportation Company, L.L.C.

James F. Wallington, Baptiste & Wilder, Washington, DC, for Intervenor for Respondent.

Before ROGERS, TATEL and GARLAND, Circuit Judges.

### *JUDGMENT*

The petition for review and cross-application for enforcement of an order of the National Labor Relations Board was considered on the briefs and appendix filed by the parties. *See* Fed. R.App. P. 34(a)(2); D.C.Cir. Rule 34(j). For the reasons stated in the accompanying Memorandum, it is

**ORDERED** and **ADJUDGED** that the petition for review be denied and the cross-application for enforcement be granted.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or rehearing en banc. *See* Fed R.App. P. 41(b); D.C.Cir. Rule 41.

### *MEMORANDUM*

Active Transportation Company petitions for review of the Decision and Order of the National Labor Relations Board that it violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) & (1), by refusing to execute a written contract embodying an agreement with Local 71 of the International Brotherhood of Teamsters. The court "will set aside the Board's decision only if the Board 'acted arbitrarily or otherwise erred in applying established law to the facts at issue, or if its findings are not supported by substantial evidence.'" *Waterbury Hotel Mgmt., LLC v. NLRB*, 314 F.3d 645, 650 (D.C.Cir.2003) (quoting *Plumbers & Pipe Fitters Local Union No. 32 v. NLRB*, 50 F.3d 29, 32 (D.C.Cir.

1995)). Credibility determinations will be overturned only where they "are 'hopelessly incredible,' 'self-contradictory,' or 'patently unsupportable.'" *Cadbury Beverages, Inc. v. NLRB*, 160 F.3d 24, 28 (D.C.Cir. 1998) (quoting *Capital Cleaning Contractors, Inc. v. NLRB*, 147 F.3d 999, 1004 (D.C.Cir.1998)).

■ The Board found, adopting the findings of the Administrative Law Judge ("ALJ"), that the company reached an agreement with Local 71 in September 2001, or at the very latest mid-October 2001, to switch to a union-sponsored health, welfare, and pension plan. The evidence showed that after discussing the proposed changes with the union in early September 2001, company representatives met with union officials and employees at the Mt. Holly, North Carolina facility on October 5 and 6 to discuss the change in benefits. On October 8, Local 71 informed the company that the employees had ratified the benefits change. On October 18, the company President, Bruce Jackson, sent the Vice–President for Labor Relations, Todd Barnum, a copy of the participation agreement and an internal memorandum asking him to verify figures, to confirm company procedures for making the change, and to clarify language in the agreement. The next day, Local 71 faxed Jackson a signed amendment to the local rider to the master collective bargaining agreement authorizing the change. Soon thereafter, Jackson indicated his approval with the language and submitted the necessary amendment to the local rider to the National Automobile Transporters Joint Arbitration Committee, which approved it on October 31. The Board, thus, had ample basis to find the parties intended to switch health and pension plans. *See Capitol–Husting Co. v. NLRB*, 671 F.2d 237, 243 (7th Cir.1982). The company's reliance on its interpretation of Jackson's

memorandum to Barnum is misplaced, particularly in light of the union's credited testimony regarding why the implementation date was changed to November 1.

■ The company's challenge to the ALJ's credibility findings likewise fails. The Board, agreeing with the ALJ, discredited the testimony of Jackson and Barnum that, even if there was an agreement, it was subject to the company's successful bid for a customer's continued business. The ALJ's assessment of credibility is supported by the context and sequence of events, Jackson's attempt to finesse issues, and the lack of documentation corroborating the company's version of events. Further, the ALJ evaluated the language in Jackson's November 1, 2001, letter "advis[ing]" the Union, that the company would not implement the benefit changes until after resolving the bid, as hardly customary language when someone is telling another something the second person already knows. Combined with the union's almost immediate response by fax inquiring whether the company was "reneg[ing]" on its agreement, the Board could reasonably conclude that the company had not raised the contingency with the union at an earlier time and that the parties had not agreed to such a contingency. The fact that the union president did not testify does not demonstrate an abuse of discretion by the Board in declining to draw an adverse inference. *See Overnite Transp. Co. v. NLRB,* 140 F.3d 259, 266–67 n. 1 (D.C.Cir.1998). Even if the company representatives thought their statements communicated a contingency, the Board properly concluded that in the absence of plain words informing the union of the contingency, there was no basis to find the parties had agreed to it. *See NLRB v. Gen. Teamsters Union Local 662,* 368 F.3d 741, 745 (7th Cir.2004); *NLRB v. Roll & Hold Div. Area Transp. Co.,* 957 F.2d 328,·

331 (7th Cir.1992); *Observer–Dispatch,* 334 N.L.R.B. 1067, 1072–73, 2001 WL 1807362 (2001). While the company advances multiple reasons why it would not make good business sense for it to agree to switch benefit plans without assurances that it won the bid, the Board's analysis explained that the company agreed to switch plans because doing so lowered and stabilized costs at a financially important time for the company, and that upon receiving indication that its bid would not get the contract, the company determined that a contingency was needed.

Accordingly, as there is no merit to the company's claim that the union sat on its rights, the Board properly concluded that the company violated sections 8(a)(5) and (1). *See NLRB v. Strong,* 393 U.S. 357, 361, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969); *NLRB v. Newark Morning Ledger Co.,* 120 F.2d 262, 265 & n. 1 (3d Cir.1941); *Advanced Telephonics, Inc.,* 341 N.L.R.B. No. 40, at 2 n. 3, 2004 WL 390648 (Feb. 27, 2004). The company's contention that the Board's order imposed a punitive remedy is, as the Board found, *see Active Transportation Co.,* 340 N.L.R.B. No. 47, at 1 n. 2, 2003 WL 22050895 (Sept. 30, 2003), premature. *See, e.g., Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 902, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); *Ark Las Vegas Rest. Corp. v. NLRB,* 334 F.3d 99, 107 (D.C.Cir.2003).